[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cunnane v. LaRose*, Slip Opinion No. 2022-Ohio-2875.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-2875

THE STATE EX REL. CUNNANE ET AL. *v*. LAROSE, SECY. OF STATE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cunnane v. LaRose*, Slip Opinion No. 2022-Ohio-2875.]**

*Elections—Mandamus—Independent candidates for office—Following prospective candidates' declarations that they were not affiliated with any political party, candidates each cast a partisan ballot in Ohio's May 2022 primary election, prompting the Ohio secretary of state to reject their joint nominating petition—Candidates did not show by clear and convincing evidence that they have a legal right to appear on the November 2022 general-election ballot as independent candidates or that the secretary of state has an obligation to certify their names to the ballot—Writ denied.*

(No. 2022-0918—Submitted August 15, 2022—Decided August 18, 2022.)

IN MANDAMUS.

————————————

**Per Curiam.**

## I. INTRODUCTION

**{¶ 1}** Relators, F. Patrick Cunnane and Mary E. Cunnane ("the Cunnanes"), filed a joint nominating petition to appear on Ohio's November 2022 general-election ballot as independent candidates for the offices of governor and lieutenant governor. Respondent, Ohio Secretary of State Frank LaRose, rejected their nominating petition because the Cunnanes each cast a partisan ballot in the May 2022 primary election and therefore, in his view, they could not claim to be unaffiliated from a political party. In this expedited election case, the Cunnanes seek a writ of mandamus to compel Secretary LaRose to certify their names to the ballot. We deny the writ.

## II. BACKGROUND

**{¶ 2}** On April 28, 2022, the Cunnanes filed a joint nominating petition and statement of candidacy to run as independent candidates for governor and lieutenant governor in Ohio's November 2022 general election. The petition contained a sufficient number of valid signatures to qualify for the ballot. No protests were filed against their joint candidacy.

**{¶ 3}** The Cunnanes each voted a Republican Party ballot in the May 3, 2022 primary election. In July, Secretary LaRose's office informed the Cunnanes that they would not be certified to the ballot. The letter from Secretary LaRose's office informing them of that decision stated:

> Under Ohio law, an independent candidate must actually be unaffiliated from any political party, and the required claim of being unaffiliated must be made in good faith in order for the candidate to be qualified to run as an independent candidate. If an independent candidate votes in a party primary election, the candidate is not

actually unaffiliated, and the candidate's claim of independence was either not made in good faith or is no longer current.

(Footnotes omitted.)

### III. LEGAL ANALYSIS

#### A. Standard of review

{¶ 4} To be entitled to a writ of mandamus, the Cunnanes must establish by clear and convincing evidence that (1) they have a clear legal right to the requested relief, (2) Secretary LaRose has a clear legal duty to provide it, and (3) they do not have an adequate remedy in the ordinary course of the law. *See State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13. Given the proximity of the November election, the Cunnanes lack an adequate remedy in the ordinary course of the law because "an appellate process would last well past the election," *State ex rel. Smart v. McKinley*, 64 Ohio St.2d 5, 6, 412 N.E.2d 393 (1980).

{¶ 5} The first two elements of the mandamus analysis require us to determine whether Secretary LaRose engaged in fraud or corruption, abused his discretion, or acted in clear disregard of applicable law. *See State ex rel. Lucas Cty. Republican Party Executive Commt. v. Brunner*, 125 Ohio St.3d 427, 2010-Ohio-1873, 928 N.E.2d 1072, ¶ 9. The Cunnanes have not alleged that Secretary LaRose engaged in fraud or corruption. "An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).

#### B. The law of disaffiliation

{¶ 6} The Ohio Revised Code broadly defines who qualifies as an "independent candidate": any candidate who claims not to be affiliated with a political party and who meets specific filing requirements. R.C. 3501.01(I); *State ex rel. Davis v. Summit Cty. Bd. of Elections*, 137 Ohio St.3d 222, 2013-Ohio-4616,

998 N.E.2d 1093, ¶ 16. "Implicit in the submission of the [statement of candidacy and nominating petitions] is the candidate's declaration that he or she is independent; *that declaration must be made in good faith*." (Emphasis added.) *State ex rel. Morris v. Stark Cty. Bd. of Elections*, 143 Ohio St.3d 507, 2015-Ohio-3659, 39 N.E.3d 1232, ¶ 29.

### *C. The evidence of disaffiliation*

**{¶ 7}** As a preliminary matter, the Cunnanes assert that Secretary LaRose exceeded his authority by rejecting their petition because, in their view, there is "no specific authority granted in statute authorizing election officials to inquire into whether a candidate's claim of independence is legitimate or in good faith." To the contrary, the Revised Code expressly provides that the secretary of state shall accept a candidate petition *unless* "[t]he candidate's candidacy or the petition violates the requirements of [R.C. Chapter 3501], Chapter 3513 of the Revised Code, or any other requirements established by law." R.C. 3501.39(A)(4).

**{¶ 8}** Alternatively, the Cunnanes attack the merits of Secretary LaRose's decision, insisting that he lacked sufficient evidence showing that their declarations were untrue or made in bad faith. Their thesis is that a prospective candidate's act of voting a partisan ballot, standing alone, is not sufficient evidence to overcome the candidate's claim that he or she is an independent. They rely on our statement in *Davis* that "[a] candidate's prior voting history, standing alone, cannot be a sufficient basis for disqualifying an independent candidate." *Id*. at ¶ 19. But they overlook the context in which that statement was made.

**{¶ 9}** In *Davis*, this court considered whether a candidate's history of partisan-primary voting, which occurred *before* the candidate's declaration of nonaffiliation, conclusively proved that the declaration was insincere. 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, at ¶ 18-19, 27-28. We held that it did not, because "[d]isaffiliation *by definition* presumes a history of support for or membership in a political party. If a candidate's prior voting record, standing alone,

could trump a declaration of disaffiliation, then disaffiliation would never be possible." (Emphasis sic.) *Id*. at ¶ 19. When the partisan voting activity precedes the disaffiliation declaration, "the evidence needs to be that much more substantial to warrant excluding an otherwise qualified candidate." *Id*. at ¶ 27.

**{¶ 10}** But in this case, the Cunnanes filed declarations that they were independent from any political party and then, five days later, cast ballots in the Republican Party primary election. Casting a partisan-primary ballot is a quintessential act of affiliation. *See, e.g.*, *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, 136 Ohio St.3d 371, 2013-Ohio-3867, 995 N.E.2d 1194, ¶ 28, fn. 2 ("A voter cannot register as an independent, *except in the negative sense of not voting in partisan primaries* or signing partisan nominating petitions" [emphasis added]). Because the Cunnanes voted partisan-primary ballots *after* declaring their nonaffiliation, Secretary LaRose reasonably concluded that their declarations either were made in bad faith in April or were no longer true in May. Either way, the Cunnanes were ineligible to appear on the November ballot as independent candidates.

**{¶ 11}** The Cunnanes cite several court decisions in arguing that a prospective candidate's partisan-primary-voting history alone is not dispositive of whether the candidate is an independent, but their treatment of those cases rests on a logical fallacy. For example, they cite the seminal case *Morrison v. Colley*, 467 F.3d 503 (6th Cir.2006). In that case, Morrison had circulated petitions to run as a candidate for the Madison County Republican Party Central Committee and the Ohio Republican Party State Central Committee. *Id.* at 505. He appeared on the May 2, 2006 Republican Party primary ballot for both offices. *Id.* Three weeks before the May 2 primary, he ran advertisements in support of his candidacies, identifying himself as a Republican. *Id.* And on May 2, he requested a Republican Party primary ballot and voted in the Republican Party primary. *Id.* But on May 1, the day before the primary, he filed nominating petitions to run as an independent

candidate for Congress. *Id.* Based on those facts, the United States Court of Appeals for the Sixth Circuit held that Morrison's declaration of nonaffiliation was not made in good faith:

> By registering as a Republican and then affirmatively requesting and voting the Republican Party primary ballot on May 2, 2006, Morrison necessarily evinced a desire to be affiliated with the Republican Party at that time. Indeed, when Morrison presented himself as eligible to vote in the Republican primary on May 2, 2006, Ohio law required him to be prepared to prove, under penalty of punishment for false statement, that he was affiliated with the Republican Party.

(Emphasis deleted.) *Id*. at 510.

{¶ 12} According to the Cunnanes, the Sixth Circuit in *Morrison* "recognized that it was the multitude of additional factors over and above post-filing primary voting which led to the conclusion that Morrison was not in good faith unaffiliated." This is an inaccurate reading of *Morrison*. The presence of additional evidence of bad faith does not mean that no single piece of evidence can be dispositive. In other words, the Sixth Circuit did *not* hold that it would have reached a different conclusion and allowed Morrison's candidacy if his postdeclaration primary voting had been the only evidence presented.

{¶ 13} The Cunnanes make the same argument with respect to other disaffiliation cases: that postdisaffiliation primary voting was only one factor cited by the court in disallowing a person's candidacy. *See, e.g.*, *State ex rel. Wilkerson v. Trumbull Cty. Bd. of Elections*, 11th Dist. Trumbull No. 2007-T-0081, 2007-Ohio-4762. But *Wilkerson* cuts against their argument. The court of appeals in *Wilkerson* stated that "[w]hen an independent candidate decides to vote in a primary

election, he has essentially taken a completely new step which nullifies any prior declarations he previously made as to his lack of affiliation with a political party." *Id*. at ¶ 24. Thus, in the view of the *Wilkerson* court, postdeclaration primary voting *is* sufficient evidence to invalidate a disaffiliation declaration. At the very least, using postdeclaration-voting evidence to invalidate a disaffiliation declaration is not an abuse of discretion by the secretary of state.

**{¶ 14}** Next, the Cunnanes argue that their voting in the Republican Party primary should not be construed as evidence of their affiliation with the Republican Party because, although they requested Republican Party ballots, they did not swear an oath of allegiance to the Republican Party when they did so. As the quotation above from *Morrison* shows, the request for a partisan ballot was an act of affiliation because "Ohio law required [them] to be prepared to prove, under penalty of punishment for false statement, that [they were] affiliated with the Republican Party." (Emphasis deleted.) *Morrison*, 467 F.3d at 510. But according to F. Patrick Cunnane, had he been asked to make such an oath, he would have refused. The Cunnanes blame the poll workers for not offering them an issues-only ballot.

**{¶ 15}** The Cunnanes' effort to shift the blame to the poll workers is not persuasive. Although they claim they would have preferred an issues-only ballot, they do not allege that they voted on only the issues on the ballot that they received. And although they imply that they were unaware that they could request an issues-only ballot, the evidence shows that Mary Cunnane worked as a poll worker during the May 2022 primary. If there was an issues-only ballot for that election, she would have known about it.

**{¶ 16}** The Cunnanes have not met their burden to prove that Secretary LaRose abused his discretion when he declined to certify them as independent candidates. Accordingly, we deny the writ.

## IV. CONCLUSION

{¶ 17} The Cunnanes have not shown by clear and convincing evidence that they have a legal right to appear on the November 2022 general-election ballot as independent candidates or that Secretary LaRose has an obligation to certify their names to the ballot. We deny the writ of mandamus.

Writ denied.

O'CONNOR, C.J., and FISCHER, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs in judgment only.

DEWINE and BRUNNER, JJ., not participating.

—————————————

Brunner Quinn, Rick L. Brunner, and Patrick M. Quinn, for relators.

Dave Yost, Attorney General, and Julie M. Pfeiffer, Heather Buchanan, and Allison D. Daniel, Assistant Attorneys General, for respondent.

—————————————